1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    FRED HSU,                                Case No.  25-cv-04826-SK

8                    Plaintiff,

9           v.                                **ORDER GRANTING MOTION TO
                                              DISMISS**
10   AXIS SPECIALTY EUROPE SE,

11                   Defendant.               Regarding Docket No. 8

12          This matter comes before the Court upon consideration of the motion to dismiss filed by

13   Axis Specialty Europe SE ("Defendant") for lack of personal jurisdiction or, in the alternative,

14   *forum non conveniens*.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332, and all parties

15   have consented to the jurisdiction of a magistrate judge, (Dkt. Nos. 10, 11).  Having carefully

16   considered the parties' papers, relevant legal authority, the record in the case, and having had the

17   benefit of oral argument, the Court hereby GRANTS Defendant's motion for the reasons set forth

18   below.

19                                **BACKGROUND**

20          Plaintiff Fred Hsu ("Plaintiff") brings this action against Defendant based on its denial of

21   liability insurance coverage.  (Dkt. No. 1-1.)  Plaintiff served as Director of two corporations:

22   Mobile Gaming Technologies, Inc. ("MGT") and its subsidiary, CashBet Alderney Ltd.

23   ("CashBet").  (Dkt. No. 16-1, ¶¶ 3-4.)  Defendant issued a Directors and Officers Liability

24   Insurance Policy (the "Policy") to MGT and CashBet covering the January 8, 2018 to January 8,

25   2019 period.  (Dkt. No. 8-1, ¶ 10; Dkt. No. 8-2 (Ex. A); Dkt. No. 16-1, ¶ 5; Dkt. No. 16-1 (Ex.

26   C).)  MGT sought coverage from Defendant relating to four lawsuits that named Plaintiff as a

27   defendant.  (Dkt. No. 8-1, ¶¶ 12-13; Dkt. No. 16-1, ¶¶ 10-11.)  Defendant denied coverage.  (Dkt.

28   No. 8, p. 7; 16-1, ¶ 11.)

1    On March 25, 2025, Plaintiff filed this action in the Superior Court of California for the

2   County of Alameda, bringing claims for breach of contract and breach of the covenant of good

3   faith and fair dealing. (Dkt. No. 1-1.) On June 6, 2025, Defendant removed the action to federal

4   court on the basis of diversity jurisdiction. (Dkt. No. 1.) Defendant filed the instant motion to

5   dismiss on June 13, 2025, arguing that this Court lacks personal jurisdiction over it and that the

6   Court should enforce a forum selection clause in the Policy identifying the Courts of England and

7   Wales as the forum of choice. (Dkt. No. 8.) Plaintiff opposed. (Dkt. No. 16.) Defendant filed a

8   reply. (Dkt. No. 20.) The Court heard oral argument on August 11, 2025.

9                                          **ANALYSIS**

10   **A.    Personal Jurisdiction.**

11          **1.    Applicable Legal Standard.**

12          Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss an action

13   for lack of personal jurisdiction. Presented with such a motion, the plaintiff then bears the burden

14   of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir.

15   2008). If the district court decides the motion without holding an evidentiary hearing, as is the

16   case here, the plaintiff need only make a prima facie showing of the jurisdictional facts. *Id.* The

17   court takes uncontroverted allegations in the plaintiff's complaint as true and resolves any factual

18   conflicts in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800

19   (9th Cir. 2004). However, the plaintiff may not merely rest on bare allegations, and the court may

20   not assume the truth of allegations contradicted by affidavit. *Mavrix Photo, Inc. v. Brand Techs.,

21   Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).

22          Where, as here, no federal statute authorizes personal jurisdiction, the district court must

23   apply the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320

24   (9th Cir. 1998). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with

25   the due process clause of the Constitution. *Panavision*, 141 F.3d at 1320. Accordingly, the

26   jurisdictional analyses under state and federal law are the same. *Schwarzenegger*, 374 F.3d at

27   800-01. For a court to exercise personal jurisdiction over a nonresident defendant without

28   violating the dictates of due process, that defendant must have "certain minimum contacts" with

United States District Court
Northern District of California

1    the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair

2    play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting

3    *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

4          Personal jurisdiction may be either general or specific.  *Boschetto*, 539 F.3d at 1016.

5    Where, as here, the plaintiff asserts specific jurisdiction, courts apply a three-part test:

6        (1) The nonresident defendant must purposefully direct his activities or consummate
7             some transaction with the forum or resident thereof; or perform some act by
         which he purposefully avails himself of the privilege of conducting activities in
8             the forum, thereby invoking the benefits and protections of its laws;

9        (2) The claim must be one which arises out of or relates to the defendant's forum-
         related activities; and

10       (3) The exercise of jurisdiction must comport with fair play and substantial justice,
         i.e., it must be reasonable.
11

12   *Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden of satisfying the first two prongs

13   of this test.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  If the plaintiff fails to satisfy

14   either of the first two prongs, personal jurisdiction does not lie in the forum state.

15   *Schwarzenegger*, 374 F.3d at 802.  If both prongs are satisfied, the burden shifts to the defendant

16   to demonstrate that the exercise of jurisdiction would be unreasonable.  *Burger King Corp. v.*

17   *Rudzewicz*, 471 U.S. 462, 477 (1985).

18         In analyzing the first prong of the specific jurisdiction test, courts "typically treat the

19   concept of 'purposeful availment' somewhat differently in tort and contract cases."  *Yahoo! Inc. v.*

20   *La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (per

21   curiam).  "In contract cases" like the one at bar, courts "typically inquire whether a defendant

22   'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a]

23   transaction' in the forum, focusing on activities such as delivering goods or executing a

24   contract."  *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

25         The decision regarding whether to allow jurisdictional discovery rests within the sound

26   discretion of the trial court.  *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 691 (9th Cir.

27   2006) (per curiam).  Jurisdictional discovery "should ordinarily be granted where pertinent facts

28   bearing on the question of jurisdiction are controverted or where a more satisfactory showing of

United States District Court
Northern District of California

1    the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)

2    (quotation marks and citation omitted).  "But a mere hunch that discovery might yield

3    jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient

4    reasons for a court to grant jurisdictional discovery." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22

5    F.4th 852, 864-65 (9th Cir. 2022) (cleaned up).

6            **2.    Application.**

7            Defendant argues that Plaintiff has not met his burden of establishing the first prong—that

8    Defendant purposefully availed itself of the privilege of conducting business in California.  (Dkt.

9    No. 8, pp. 10-12.)  The Court agrees.

10           Simply put, Defendant does not conduct business in California.  Defendant is an Irish

11   corporation with offices in Ireland, the United Kingdom, and Belgium.  (Dkt. No. 8-1, ¶¶ 3-4.)

12   Defendant has no employees, agents, or property in California.  (*Id.* at ¶ 8.)  Defendant is not

13   licensed to issue insurance in the state of California, nor is it registered with the California

14   Secretary of State.  (*Id.* at ¶¶ 5-6.)  Plaintiff points out that Defendant is approved  as a surplus

15   lines insurer in California, (Dkt. No. 16, p. 6), but that means that Defendant "ha[s] no presence in

16   California." *Silvers v. Bd. of Equalization*, 116 Cal. Rptr. 3d 355, 356 (Ct. App. 2010).

17   Moreover, this action does not arise out of a surplus lines insurance contract.  In addition, Plaintiff

18   does not argue that Defendant reached out to California to negotiate the Policy or consummated

19   the transaction in California.  Plaintiff's declarations suggest that Plaintiff, not Defendant, reached

20   abroad to negotiate the Policy.  Email exchanges document that Plaintiff's broker's "colleagues in

21   London" negotiated the policy with "London u/w [underwriters] at [Defendant]."  (Dkt. No. 16-1

22   (Ex. A)).

23           Defendant's only connection to California appears to be the Policy issued to MGT and

24   CashBet, both California corporations.  (Dkt. No. 16-1, ¶ 4.)  MGT's U.S.-based insurance broker

25   negotiated the Policy.  (*Id.* at ¶ 7.)  These are Plaintiff's contacts, not, as is required, "actions by

26   the defendant *himself* that create a substantial connection with the forum State." *Burger King*, 471

27   U.S. at 475 (quotation marks and citation omitted).  Defendant's Policy with California

28   corporations is insufficient to establish minimum contacts, especially where Defendant negotiated

United States District Court
Northern District of California

4

and issued the Policy from London. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (holding that an agreement with a California resident, which was formed and performed out-of-state, was insufficient to establish minimum contacts with California); *see also Boschetto*, 539 F.3d at 1017 ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." (citing *Burger King*, 471 U.S. at 478)).

Plaintiff relies on *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.*, 907 F.2d 911 (9th Cir. 1990), to argue that "an insurer 'purposefully avails' itself of a forum when it has 'contracted to indemnify and defend claims arising there.'" (Dkt. No. 16, p. 7 (quoting *id.* at 914). In *Farmers*, a Canadian insurer of a vehicle involved in an accident in Montana refused to defend the driver—who did not own the vehicle—in Montana court. 907 F.2d at 912. The driver had her own insurance, which provided a defense for her and then sued the Canadian insurer for reimbursement in Montana federal district court. *Id.* The Ninth Circuit held that the insurer purposefully availed itself of Montana because it contracted to defend the insured, because its policy coverage included Montana, and because an insured event resulted in litigation in Montana. *Id.* at 913-14. The court reasoned that "automobile liability insurers contract to indemnify *and defend* the insured for claims that will foreseeably result in litigation in foreign states," such that "litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer." *Id.* at 914 (emphasis added).

More recently, in *King v. American Family Mutual Insurance Co.*, 632 F.3d 570 (9th Cir. 2011), the Ninth Circuit narrowed the scope of its holding in *Farmers*. *Id.* at 580 n.10. In *King*, the plaintiff sued two Colorado insurers for coverage over a motorcycle accident that occurred in Montana. *Id.* at 572-73. Citing Montana caselaw, the court held that an insurance policy containing a nationwide coverage clause was insufficient to establish personal jurisdiction in Montana. *Id.* at 580 (citing *Carter v. Miss. Farm Bureau Cas. Ins. Co.*, 109 P.3d 735, 742 (Mont. 2005)). The court distinguished *Farmers* on the basis that *Farmers* involved a dispute triggering the insurers' obligation to defend the insured, whereas *King* involved a breach of contract dispute, explaining:

Our decision in [*Farmers*] is not to the contrary. Although we held in *Farmers* that

a foreign insurer could be subjected to personal jurisdiction in Montana, *Farmers* was an indemnity dispute. As a result, *Farmers* was "a case in which a company's insured is sued as a result of a car accident in a foreign state," "arguably [giving rise to] an obligation to appear and defend the driver," while this is a case, like *Carter*, in which "the insured is suing its . . . insurer in a foreign state for breach of contract." *Carter*, 109 P.3d at 741.

*Id.* at 580 n.10.

Following *King*, courts in this Circuit have consistently held that an insurance policy containing a nationwide coverage clause, without more, is insufficient to establish personal jurisdiction over an insurer. *Jaeger v. Am. Fam. Mut. Ins. Co., S.I.*, 735 F. Supp. 3d 1125, 1132-33 (D. Alaska 2024); *First Nat'l Bank of Sioux Falls v. Est. of Carlson*, 448 F. Supp. 3d 1091, 1103-04 (D. Mont. 2020); *Webcor Constr., LP v. Zurich Am. Ins. Co.*, No. 17-CV-02220-YGR, 2017 WL 5068674, at *4-6 (N.D. Cal. Nov. 3, 2017); *Dokoozian Constr. LLC v. Exec. Risk Specialty Ins. Co.*, No. C15-703 MJP, 2015 WL 12085859, at *3 (W.D. Wash. July 28, 2015); *Hunt v. Auto-Owners Ins. Co.*, No. 2:15-CV-JCM NJK, 2015 WL 3626579, at *5 (D. Nev. June 10, 2015); *Scott, Blane & Darren Recovery LLC v. Auto-Owners Ins. Co.*, No. 2:14-CV-03675-ODW, 2014 WL 4258280, at *4-6 (C.D. Cal. Aug. 27, 2014).

This case is governed by *King*, not *Farmers*. Although Plaintiff was sued in California, this suit is not an attempt to compel Defendant to defend him in those actions. Plaintiff has already resolved the underlying California litigation. (Dkt. No. 16-1, ¶ 15.) Rather, Plaintiff now seeks damages for Defendant's alleged breach of the insurance contract and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 1, pp. 7–8.) As in *King*, this is a claim where an "insured is suing its . . . insurer in a foreign state for breach of contract." 632 F.3d at 580 n.10 (quoting *Carter*, 109 P.3d at 741). And "*Farmers* . . . does not apply in a situation where an insured is suing its insurer in a foreign state for breach of contract." *First Nat'l*, 448 F. Supp. 3d at 1104.

As Plaintiff has not satisfied the first prong of the personal jurisdiction test, personal jurisdiction does not lie in California. The Court therefore GRANTS Defendant's motion to dismiss for lack of personal jurisdiction.

Plaintiff requests the Court permit jurisdictional discovery because "the information that is available shows that [Defendant] has a greater presence in California than it asserts." (Dkt. No.

16, p. 11.)  At oral argument, Plaintiff indicated that he would seek to information about Defendant's correspondence with the California Department of Insurance, number of California policyholders, contacts with and marketing to California brokers, and corporate structure.  This request is nothing more than "a mere hunch" unsupported by any details about what relevant information Plaintiff expects to uncover.  *See LNS Enters.*, 22 F.4th at 864-65 (affirming denial of jurisdictional discovery where the plaintiffs sought to "look[] into whether there are more contacts," because the lack of contacts based on existing facts did not "mean that those defendants don't" conduct other business in the state").  Plaintiff fails to make the necessary showing to justify jurisdictional discovery, and his request is therefore DENIED.

**B.      Forum Non Conveniens.**

Because this Court has no jurisdiction, the Court need not reach the question of whether the forum selection clause applies.  However, the Court finds that, even if there were jurisdiction, the forum selection clause here requires litigation of this issue in the courts of England and Wales, as required by the Policy.

**1.   Applicable Legal Standard.**

A forum selection clause is appropriately enforced through the doctrine of *forum non conveniens*.  *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).  "The doctrine of *forum non conveniens* allows a court to dismiss a case properly before it when litigation would be more convenient in a foreign forum."  *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1210 (9th Cir. 2017).

A forum selection clause is enforceable if (1) the forum selection clause is contained in a valid contract, (2) the plaintiff's claims fall within the scope of the forum selection clause, and (3) the plaintiff has not demonstrated "extraordinary circumstances unrelated to the convenience of the parties."  *Atlantic Marine*, 571 U.S. at 62; *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086-88 (9th Cir. 2018).

To demonstrate "extraordinary circumstances," the plaintiff must make a strong showing that: (1) the forum selection clause is invalid due to fraud or overreaching; (2) enforcement would contravene a strong public policy of the forum; or (3) trial in the contractual forum "will be so

1    gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of

2    his day in court." *Yei A. Sun*, 901 F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407

3    U.S. 1, 15, 18 (1972)). "The practical result is that a forum-selection clause 'should control except

4    in unusual cases.'" *Id.* at 1088 (quoting *Atlantic Marine*, 571 U.S. at 64).

5          **2.**      **Application.**

6         The Policy contains the following language: "Except as otherwise provided herein, the

7    parties will submit to the exclusive jurisdiction of the courts of the [sic] England & Wales." (Dkt.

8    No. 8-2 (Ex. A); Dkt. No. 16-1 (Ex. C).)

9         Plaintiff does not dispute that the Policy is a valid contract that encompasses his contract

10    claims. (Dkt. No. 16.) In brief, Plaintiff is seeking to benefit from the Policy, and thus, cannot

11    seriously dispute that the Policy itself is valid. *See White Knight Yacht LLC v. Certain Lloyds at

12    Lloyd's London*, 407 F. Supp. 3d 931, 947 (S.D. Cal. 2019) ("[A] non-signatory plaintiff who

13    'knowingly exploits the benefits of [an] agreement and receives benefits flowing directly from the

14    agreement' may be required to abide by the forum selection clause." (quoting *Nguyen v. Barnes &

15    Noble, Inc.*, 763 F.3d 1171, 1180 (9th Cir. 2014))). The forum selection clause plainly designates

16    the courts of England and Wales as the courts with exclusive jurisdiction over the Policy. (Dkt.

17    No. 8-2 (Ex. A); Dkt. No. 16-1 (Ex. C).); *see also White Knight*, 407 F. Supp. 3d at 943-44

18    (explaining that contract claims "paradigmatically fall within a contractual forum selection

19    clause."). Accordingly, a valid forum selection clause applies.

20         However, Plaintiff argues that all three "extraordinary circumstances" disfavor transfer in

21    this case—fraud or overreaching, deprivation of Plaintiff's "day in court," and public policy.

22    (Dkt. No. 16, pp. 12-18.) The Court addresses each argument in turn.

23              **i.**      **Fraud or Overreaching.**

24         "For a party to escape a forum selection clause on the grounds of fraud, it must show that

25    'the *inclusion of that clause in the contract* was the product of fraud or coercion.'" *Richards v.

26    Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (en banc) (quoting *Scherk v. Alberto-

27    Culver Co.*, 417 U.S. 506, 519 n.14 (1974)).

28         Plaintiff contends that the forum selection clause was the product of fraud or overreaching

United States District Court
Northern District of California

8

because the insureds allegedly "did not have an opportunity to become aware of the clause or to contest it before the policy incepted."  (Dkt. No. 16, pp. 12-13; Dkt. No. 16-1, ¶ 8 ("None of the communications I received prior to the issuance of the policy informed me that there would be a forum selection clause in the policy that required all disputes with [Defendant] be litigated in the courts of England and Wales.").)

Plaintiff's own evidence belies his contention that he did not have an opportunity to learn of the forum selection clause.  On February 7, 2018, Plaintiff received an email from MGT's insurance broker stating:

> [T]he policy was issued this morning and will go thru [sic] our internal audit procedure to ensure coverage/terms are according to the quote.  In the interim, please find attached a copy of the policy for your review.  If you and/or your attorney have any questions, we will be happy to review them with you and Mike.

(Dkt. No. 16-1 (Ex. B).)  The attached Policy conspicuously includes the forum selection clause on the first page.  (Dkt. No. 16-1 (Ex. C).)  The Policy also provides that it could be cancelled through nonpayment of the premium.  (*Id.* at 8.3.)  Plaintiff has not provided any evidence that the premium was paid prior to receipt of the Policy, and the insureds apparently chose not to cancel the Policy through nonpayment.  Moreover, during oral argument, Plaintiff did not deny that the insureds could have cancelled the Policy after reviewing it, conceding that they "probably" could have done so.[1]  Plaintiff effectively agreed to the forum selection clause by taking no action against it upon receiving the policy.  *See Blunt v. Fid. & Cas. Co.*, 78 P. 729, 730 (Cal. 1904) ("[W]hen [the insured] received the policy and accepted it without objection," he could not "with good reason claim that there is anything contained in it to which he did not fully consent and agree.").  To the extent Plaintiff takes issue with Defendant's issuance of the policy prior to his review of the Policy—a common practice in the insurance industry—that argument "go[es] only to the contract as a whole" and is not specific to the forum selection clause.  *Crown Cap. Sec., L.P. v. Liberty Surplus Ins. Corp.*, No. SACV1401065JLSDFMX, 2015 WL 12748815, at *5 (C.D. Cal.

---

[1] Plaintiff further explained that cancellation of the policy would have been "practically" difficult because the insureds needed coverage.  The fact the insureds desired the benefit of the bargain does not mean that they lacked the power to reject it if they did not wish to submit to the terms of the Policy, including the forum selection clause.

United States District Court
Northern District of California

1    Mar. 30, 2015) ("[A]n allegation of fraud 'going only to the contract as a whole' is not sufficient

2    to avoid a forum selection clause." (quoting *Richards*, 135 F.3d at 1297)).

3        Moreover, the circumstances surrounding this case further suggest that the insureds had the

4    ability to learn of the forum selection clause.  In *White Knight*, another court in this Circuit found

5    that a plaintiff had the opportunity to learn of a forum selection clause where (1) the plaintiff was

6    an experienced corporate entity that should not have been surprised by the inclusion of a forum

7    selection clause in an insurance contract, (2) the plaintiff knew the insurance policy would be

8    obtained from London underwriters, and (3) the facts suggested that the Plaintiff had a copy of the

9    policy at the time payment was made.  407 F.Supp.3d at 946.

10        All three points in *White Knight* apply equally to the facts of this case.  First, the insureds

11    are sophisticated business entities represented by an insurance broker, and thus, should have been

12    familiar with forum selection clauses in insurance agreements.  *Id.* ("Forum selection clauses are

13    in rather widespread use throughout the insurance industry." (quoting *Foster v. Chesapeake Ins.*

14    *Co.*, 933 F.2d 1207, 1218 (3rd Cir. 1991))).  Second, Plaintiff and MGT's broker knew that

15    Defendant's underwriters were located in London and that the agreement was being negotiated in

16    London.  ((Dkt. No. 16-1 (Ex. A) (email communications stating, "We just received the formal

17    quote this morning from London from [Defendant]," "We have finally heard back from London

18    concerning the terms from [Defendant]," "We did hear back from London this morning

19    confirming that the underwriters at [Defendant] are okay offering terms," "The London u/w at

20    [Defendant] is asking for prior year financials," "Our colleagues in London are working with the

21    underwriters at [Defendant]").).  Third, as previously discussed, Plaintiff has not shown that the

22    policy premium was paid before the insureds had an opportunity to review the Policy.

23        The Court concludes that the inclusion of the forum selection clause in the policy was not

24    the product of fraud or coercion.

25                    **ii.    Deprivation of Day in Court.**

26        The "deprivation of day in court" exception is "difficult to satisfy."  *Yei A. Sun*, 901 F.3d at

27    1091.  "[U]nder *Atlantic Marine*, courts must enforce a forum-selection clause unless the

28    contractually selected forum affords the plaintiffs no remedies whatsoever."  *Id.* at 1092 (citing

10

1   *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 774 (5th Cir. 2016)).  "[T]he fact that *certain*

2   *types of remedies* are unavailable in the foreign forum does not change the calculus if there exists

3   a basically fair court system in that forum that would allow the plaintiff to seek some relief." *Id.*

4   (quoting *Weber*, 811 F.3d at 774).

5       Plaintiff argues he will be deprived of his day in court because (1) litigating in England or

6   Wales would be inconvenient, and (2) the courts of England and Wales do not recognize the tort of

7   bad faith and rarely impose punitive damages.  (Dkt. No. 16, pp. 14-15.)

8       First, as to inconvenience, "[w]hen parties agree to a forum-selection clause, they waive

9   the right to challenge the preselected forum as inconvenient or less convenient for themselves or

10  their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, 571 U.S. at 64.  While a

11  party may show that a forum selection clause should not be enforced if litigation literally could not

12  proceed in the chosen forum—such as when all witnesses are elsewhere or the party is physically

13  or financially unable to travel—Plaintiff has not made such a showing here.  *White Knight*, 407

14  F.Supp.3d at 947-48.  Plaintiff argues that litigation would be burdensome and expensive, (Dkt.

15  No. 16, p. 14), but offers no specific evidence that he would be *unable* to pursue litigation in the

16  courts of England and Wales.  *See White Knight*, 407 F.Supp.3d at 948 (rejecting "deprivation of

17  day in court" argument where the plaintiff offered no "specific and concrete evidence that

18  pursuing [its] claims in the Courts of England and Wales would be gravely difficult or

19  inconvenient.").

20      Second, as to the tort of bad faith and punitive damages, loss of a claim or remedy in a

21  foreign forum is insufficient to invalidate a forum selection clause.  *See Yei A. Sun*, 901 F.3d at

22  1092.  Plaintiff has not demonstrated that England and Wales lack "a basically fair court system"

23  that "would allow [him] to seek some relief" for his alleged breach of contract.  *See id.*

24      Accordingly, Plaintiff has not shown that the "deprivation of day in court" exception bars

25  enforcement of the forum selection clause in this case.

26              **iii.    Public Interest Factors.**

27  Courts consider the following public interest factors:

28  (1) The administrative difficulties flowing from court congestion;

11

(2) The local interest in having localized controversies decided at home;

(3) The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

(4) The avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

(5) The unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

Plaintiff argues that all factors weigh in his favor but devotes analysis only to the local interest factor. (Dkt. No. 16, pp. 15-18.) Specifically, Plaintiff argues that California has an interest in providing a remedy for bad faith claims in the insurance context. (*Id.*)

"A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen*, 407 U.S. at 15. Plaintiff has not identified a California statute or judicial decision announcing a public policy of providing a remedy for bad faith insurance. On the contrary, the California Supreme Court has explicitly rejected the idea that insurance bad faith claims are tethered to a public policy. *Boghos v. Certain Underwriters at Lloyd's of London*, 115 P.3d 68, 75 (Cal. 2005) (holding that an insured's claim for breach of the covenant of good faith and fair dealing did not qualify as "an unwaivable statutory right"); *see also Crown Cap.*, 2015 WL 12748815, at *7 (rejecting argument that loss of insurance bad faith claim would contravene California public policy (citing *id.*)); *Spector v. Glob. Aerospace Underwriting Managers, Ltd.*, No. B271085, 2017 WL 2806881, at *6-7 (Cal. Ct. App. June 29, 2017) (explaining that *Boghos* "rejected the proposition that insurance bad faith claims embody a statutory public policy precluding their waiver.").

Plaintiff relies on *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, 209 F. Supp. 3d 1147 (C.D. Cal. 2016) for the proposition that "[a]n insured's right to bring bad faith claims for tort and punitive damages against an insurer is fundamental to California's public policy . . . ." (Dkt. No. 16, p. 17 (quoting *id.* at 1151)). However, *Connex* did not cite any California statute or judicial decision announcing such a public policy, nor did it consider *Boghos*'s contrary language. *See Spector*, 2017 WL 2806881, at *7 n.10 (finding *Connex* unpersuasive because it did not consider

United States District Court
Northern District of California

*Boghos*).  Accordingly, *Connex* does not alter the Court's analysis.

In conclusion, no "extraordinary circumstances" disfavor transfer to the courts of England and Wales in this case.  Thus, even if the Court had jurisdiction over Defendant, enforcement of the forum selection clause warrants dismissal of this action pursuant to *forum non conveniens*.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction and *forum non conveniens* without prejudice to Plaintiff refiling his complaint in the proper jurisdiction.

**IT IS SO ORDERED**.

Dated: August 11, 2025



_____
SALLIE KIM
United States Magistrate Judge